**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| NAACP et al.,<br><br>        **Plaintiffs,**<br><br>**vs.**<br><br>**SUMMIT COUNTY et al.,**<br><br>        **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br><br>**Case No.  2:05CV378 DAK** |

This matter is before the court on (1) Defendants Summit County and Summit County Planning Commission's Motion for Partial Summary Judgment and for Stay of Proceedings (2) Defendants Bob Richer, Kenneth Woolstenhulme, Sally Elliott, Shauna Kerr, Eric Shifferli, Patrick Cone, and John and Jane Does 201-300's Motion for Partial Summary Judgment and for Stay of Proceedings, (3) Plaintiffs' Motion for Partial Summary Judgment, (4) Plaintiffs' Motion to Strike Misleading Evidence and Arguments Based Thereon from Defendants' Opposition to Plaintiffs' Motion for Partial Summary Judgment (5) Plaintiffs' Motion for Class Certification.

A hearing on the motions was held on February 23, 2006.  At the hearing, Defendants Richer, Kenneth Woolstenhulme, Sally Elliott, Shauna Kerr, Eric Shifferli, and Patrick Cone were represented by Jody K. Burnett and Robert C. Keller.  Defendants Summit County and Summit County Planning Commission were represented by Steven Allred.  Plaintiffs were represented by Alain Balmanno and Eric D. Bawden.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the

motions under advisement, the court has further considered the law and facts relating to these motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## I.  BACKGROUND

This is a proposed class action brought to bring an end to alleged housing discrimination in unincorporated Summit County, Utah.  Plaintiffs claim that Defendants have wrongfully engaged in activities with the effect of preventing diversity in the unincorporated areas of Summit County located in a large and defined geographic area that is known as the Snyderville Basin.  Plaintiffs assert that racial minorities, persons of color, persons of different national origins, persons with disabilities, senior citizens, persons of moderate income, single persons and persons receiving federal and state benefits are being systematically prevented from living in the Snyderville Basin because of exclusionary zoning practices and housing polices promulgated and perpetuated by Defendants.  Plaintiffs, through their motion for partial summary judgment, request that the court declare that the County is in violation of House Bill ("HB") 295 and that the court issue an injunction ordering Defendants to comply with the requirements of HB 295, as amended and codified.

Defendants, on the other hand, have moved for partial summary judgment on those portions of Plaintiffs' First Amended Complaint asserting federal statutory claims based upon alleged housing discrimination.   Defendants contend that Plaintiffs lack Article III standing to pursue their housing discrimination claims.  Defendants also request that the court exercise its discretion to stay other portions of this action which certain Plaintiffs may have standing to

pursue pending resolution of identical claims previously brought in pending state court actions.[1]

### III.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56c;  *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In reviewing the factual record, the court construes all facts and make reasonable inferences in the light most favorable to the non-moving party.  *See Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir.1998).

Where the moving party bears the burden of proof on an issue, that party cannot prevail on summary judgment "unless the evidence that he provides on that issue is conclusive."  *Torres Vargas v. Santiago Cummings*, 149 F.3d 29, 35 (1st Cir. 1998).  *See also Equal Employment Opportunity Comm'n v. Union Independiente De La Autoridad De Acueductor Y Alcantarillados De Puerto Rico*, 279 F.3d 49, 55 (1st Cir. 2002) (same); *Calderone v. United States*, 799 F.2d 254, 258 (6th Cir. 1986) (explaining that if a summary judgment movant has the burden of proof, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party.") (citation and emphasis omitted); *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986) ("[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must

---

[1]  Plaintiffs clarified in their memoranda and at the hearing on these motions that they have not asserted any claims that are duplicative of their state court claims. They stated that they have not brought any state law claims–only federal housing discrimination claims.   Thus, the court need not decide whether to abstain on any possible state law claims.

establish beyond peradventure all of the essential elements of the claim or defense to warrant

judgment in his favor.").

### III. DISCUSSION

**A.**   **DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND FOR STAY OF PROCEEDINGS**

As stated above, Defendants base their motions on the ground that Plaintiffs lack Article

III standing.  Specifically, Defendants argue, among other things, that through its past and

present zoning codes, the County has approved and continues to approve projects containing

affordable housing and that Plaintiffs have not utilized the challenged zoning ordinances to deny

approval of any particular housing project proposed by the Developer Plaintiffs (or any other

specifically identified developer).  Therefore, Defendants claim, Plaintiffs have not and cannot

prove that they have suffered any particularized injury different from any other person or persons

allegedly affected by the County's allegedly illegal actions or ordinances.  As a result, according

to Defendants, no injury can fairly be traceable to the County's alleged actions which is likely to

be redressed by the broad declaratory relief Plaintiffs seek here.

Plaintiffs, to the contrary, contend that they have standing.  They claim that all three

Plaintiff groups (Developers & Property Owners, Civil Rights Organizations, and Individuals)

have suffered particularized injury, that there is a causal connection, and that they have

demonstrated that it is "likely" that the injury will be redressed by a favorable decision.

The relevant factual background leading up to the instant dispute is as follows.   Pursuant

to the County's 1997 Plan provisions, the County's 1998 Development Code (the "1998 Code"),

adopted in February 1998, contains "Development Potential Matrices for Major Developments,"

providing in pertinent part that:

> Higher densities will be permitted when restricted affordable housing is provided within the project. Restricted housing must be of a type that is compatible with the neighborhood within which it is proposed. Restrictions by deed or other desired mechanism shall include appropriate sales and resale restrictions, rental rates restrictions, and other appropriate measures. The restrictions shall ensure that the dwelling units are oriented toward persons employed within Summit County and remain affordable to those employed in Summit County in perpetuity, including sales beyond the original owner. Affordable housing types and size, together with the percentage of such units provided must be compatible with and deemed appropriate by Summit County for the neighborhood in which it is proposed and meet the housing needs of the community. Before restricted affordable housing density increases are granted, the ability of the local community to absorb the number and type of units proposed must be demonstrated. It is not the intent of Summit County to create neighborhoods comprised of restricted affordable housing only.

Synderville Basin Development Code, adopted 1998, App. Ex 5, § § 2.3.F(2) n.6, 2.3.F(3) n.6, 2.3.F(4) n.6.

The changes enacted pursuant to the 1997 Plan and 1998 Code "up-zoned" the Developer Plaintiffs' properties to allow development densities of 1 residential unit per 20 acres, with additional densities possible through application of the Development Potential Matrices for affordable housing or other community benefits. *Id.* The Developer Plaintiffs did not challenge the 1997 Plan and 1998 Code pursuant to any state provided process in the four years after the Plan and Code were adopted. Nor have the Developer Plaintiffs made any application under the 1997 Plan and 1998 Development Code for development approval for any specific project.[2]

---

[2] It is worth noting that Defendants have set forth several approved development applications from other developers to meet the objectives of the 1998 Code for projects containing deed restricted affordable housing. Plaintiffs have failed to dispute this evidence, but they have asked for leave to conduct discovery on this issue if the court finds it relevant. Plaintiffs, however, have not satisfied the standards of Rule 56(f) of the Federal Rules of Civil Procedure, and, moreover, their request is untimely. In any event, this evidence is not critical to

In November 2004, the Developer Plaintiffs, through Plaintiff Anderson Development, submitted several "property plats" on County application forms.  The Developer Plaintiffs' submissions expressly did not request the County to process the submissions under the 1997 Plan and 1998 Code.  Instead, accompanying and supplementing the forms were letters from the Developer Plaintiffs stating, in pertinent part:

> After a careful and thorough review of the County's Snyderville Basin Development Code (hereinafter the "Code") and applicable state and federal law, the Owners have determined that key portions of the Code are not and cannot be considered to be legally valid or enforceable.  As County officials have known for a long time, the current Code is so vague, defective, undefined, discriminatory and overreaching that it violates the Owners' state and federal rights to, among other things, procedural due process, substantive due process, equal protection and freedom from government sponsored extortionate activity.  The Code is also unenforceable because it was adopted in violation of the County Land Use Development and Management Act (Chapter 27 of Title 17 of the Utah Code), contains no valid zoning map, contains other deficiencies, provides for the extraction of illegal impact fees and other improper and excessive exactions, and violates other significant provisions of law.  The Owners claim that, based on the County's past pattern of activities and actions, the County's Code, on its face and as applied, does and will violate the Owners' state and federally protected rights and results in the unlawful taking and damage of the Property without just compensation.
>
> With perhaps the arguable exception of Section 5.1 of the Code [regulating subdivision], the Owners believe that the County does not currently have in place any validly enforceable County ordinance regulating the subdivision or platting of property.  Utah law is clear that when the County has in place an invalid zoning ordinance, the affected property is to be considered unzoned.  When a property is unzoned, "the property owners may proceed with any other lawfully intended use.  In such cases, the court is limited to the remedy of declaring the zoning ordinance void and finding that the property owner affected is entitled to use this property for any lawful purpose without regard to the void zoning ordinance."  *See* Carter v. City of Salina, 773 F.2d 251 (10th Cir. 1985) at 255.  The resulting regulatory ordinance vacuum in the Code leaves only applicable state law to regulate the use of the Owners' Property.  The only state

---

the court's determination because the court would still find that Plaintiffs lack standing even without this evidence.

6

> law appearing to regulate the platting of the Property is Part 8 of Chapter 27 of
> Title 17 of the Utah Code Annotated (the "Utah Subdivision Act").  Section 804
> of the Utah Subdivision Act specifies the only applicable requirements for a
> subdivision plat.  The Plat submitted herewith complies with those requirements.
> Please note that Section 804(2)(c) of the Utah Subdivision Act provides that the
> County Executive "shall approve the plat as provided in [the Utah Subdivision
> Act.]"

See Correspondence from Gerald D. Anderson, dated November 3, 2004, App. Ex. 10.

The County's Community Development Director, David Allen, believing that there was

no legally binding directive or authority endorsing Plaintiffs' unilateral assertions, returned the

Development Plaintiffs' submissions by letter stating, in pertinent part:

> Chapter 3 of the Snyderville Basin Development Code (Code) outlines the
> appropriate processes for reviewing development applications in the Snyderville
> Basin.  The application that was submitted on November 3, 2004, would be
> considered a Major Development.  Section 3.7 of the Code states that a major
> Development requires a Sketch Plan application be filed and reviewed, followed
> by an application for a Specially Planned Area Zone Designation.  In this case,
> the proposal would be evaluated based upon the Development Matrix for Major
> Development outside a Resort, Town or Village Center (Section 2.3.F2).  An
> application for final plat for a major development cannot be accepted for
> processing until and unless the property is designated a Specially Planned Area
> under the provisions of the Code.  I have enclosed the application requirements
> for both the Sketch Plan process and the SPA Rezone process for your use.  If you
> would like further information on the SPA process for a major development, I
> would be happy to discuss that with you.
>
> Inasmuch as the General Plan and Code are regulatory and are the legally adopted
> zoning laws in effect over your property pursuant to authority granted to Summit
> County under the County Land Use Management Act (Utah Code Ann. § 17-27-
> 101, et. seq.), it would be a violation of our existing laws for us to process your
> application as submitted.
>
> While we appreciate the allegations you make in your letter accompanying the
> application regarding our zoning regulations, the General Plan and Code are nonetheless
> the current legally adopted and applicable laws for us to process your application as
> submitted. . . .  If you would like assistance from this office in understanding the
> planning process, we would be happy to assist you in that area as well.

*See* Correspondence from David Allen, dated November 4, 2004, App. Ex. 11.

The Developer Plaintiffs did not seek further assistance or clarification, nor did they submit any other development proposal. Rather, on February 18, 2005, the Developer Plaintiffs filed a "Complaint/Petition for Review" in the Third Judicial District Court of Summit County, State of Utah, alleging constitutional and other statutory violations and seeking a declaration by the Court invalidating the 1997 Plan and 1998 Code, including the affordable housing objectives in those ordinances. Further the Complaint sought review by the state district court of the County's decision not to process the Developer Plaintiffs' "property plat" submissions.

The County has responded to the Developer Plaintiffs' state court lawsuit challenging the validity of the 1997 Plan and 1998 Code with a motion for summary judgment. To date, this court is not aware of any decision regarding the state court action.

As a result of findings and recommendations arising from a Snyderville Basin Growth Management Study completed in March 2000, during the period described above, the SBPC had been working on a comprehensive update and amendment of both the 1997 Plan and 1998 Code. Based upon SBPC public hearings, meetings, studies, and work sessions, and the BCC's own studies of the issues and pursuant to SBPC recommendations, on December 22, 2004, the BCC adopted a revised General Plan and a revised General Plan and Development Code for the Snyderville Basin prepared through this years-long process. The 2004 Plan and 2004 Code repealed and replaced the 1997 Plan and the 1998 Code.

The executive summary of the 2004 General Plan addresses housing, and provides in pertinent part:

7.  Housing

    A.    The Planning Commission has recommended the elimination of caretaker units.

    B.    The Commission recommends that affordable housing, particularly deed-restricted units, be located throughout Village Centers and not in segregated parcels.

    C.    The Plan requires that a variety of housing types, sizes and ownership opportunities be provided in a Village Center.

    D.    Incentives are recommended for providing moderate and low income housing opportunities.  To qualify for a Village Center, a minimum of 10 percent of the housing must be set aside as affordable to moderate income households.  The specific amount, category of affordability, amount of low-income housing, and other details are determined through the development approval process.  Consideration will be given to the need for such housing and other criteria.

    E.    The Planning Commission recommends that in incentive be given to exceed the required amount of affordable housing in a Village center if additional housing is deemed appropriate by the County.  Need, compatibility with the neighborhood, and other criteria are set forth in the recommendation.

    F.    Employee housing is still required in a Resort Center.

Summit County Ordinance 520, Adopting the Revised General Plan, App. Ex. 13.   In its

Housing Policy, the 2004 Plan provides:

    **OBJECTIVE**: Promote an adequate and affordable mix of housing types and sizes to

enhance the Snyderville Basin's diversity in a manner that is compatible with the unique

neighborhood identity and character and helps meet Summit County's labor force needs.

    7.1    **POLICY**: Summit County shall promote a variety of affordable housing options

        in the Snyderville Basin that are compatible with neighborhood character,

        including rental and ownership opportunities and a variety of housing types such

as multi-family, duplex, and single family detached units.

7.2    **POLICY**: Affordable housing within a specific project shall be appropriately distributed in number and location and integrated into the community or development project.  No housing project may contain more than 20% affordable housing.  Affordable housing will be geared toward the specific needs of those low and moderate-income Summit County residents as defined by HUD.

7.3    **POLIC**Y: A procedure for monitoring all deed restricted housing, and obligations hereunder, that have been approved in development agreements, or will be approved in the future, will be established.

7.4    **POLICY**: The purchase price or rental rate for moderate income affordable housing shall be targeted to households that earn seventy-five (75) percent of the median household income for the Snyderville Basin.

7.5    **POLICY**: The purchase price or rental rate for low income affordable housing shall be targeted to households that earn fifty (50) percent of the median household income for the Snyderville Basin.

7.6    **POLICY**: Summit County should, on an annual basis, establish guidelines for low and moderate income households in the Snyderville Basin; but in the absence of such guidelines, a developer, at the time of a development application, will consider available data and provide an estimate to Summit County, for review and approval, a projection of the median household income in the Snyderville Basin at that time.

7.7    **POLICY**: Village Centers shall include a diversity of housing types and sizes.

This housing diversity should be created through varying lot sizes, second and third floor housing options, and other similar techniques.  To qualify for a Village Center, it will be "mandatory" for a developer to demonstrate that a significant amount of the density be affordable housing as defined in Policies 7.6 and 7.7. This housing will be included in each phase of a multi-phase development.

7.8  **POLIC**Y: A significant portion of housing provided for the purposes of meeting the affordable housing requirement, or when provided in exchange for density incentives, should be restricted for such purposes in perpetuity.

7.9  **POLICY:** In Resort Centers, special employee housing needs that are generated as a result of the special and specific nature of the resort, including housing that meets the unique needs of seasonal employees, shall be required as part of the resort development.  This shall not be considered a means to increase density under the Development Potential table in the Development Code, but neither does seasonal housing count in the allowable density for the project.

7.10  **POLICY**: Summit County will consider development incentives in exchange for land and/or appropriate contributions made to Habitat for Humanity, Mountainlands Housing Trust, or other similar responsible organizations.

As did the 1998 Code, the Development Code adopted by the County in 2004 provides for incentive densities within Town and Resort Centers if a developer provides affordable housing.  *See e.g.*, Summit County Development Code, adopted December 22, 2004, App. Ex. 14, § 10-2-12, and at n.6

The Developer Plaintiffs have not submitted any application for development approval

whatsoever since the 2004 Plan and 2004 Code were adopted.  Instead, in January 2005, the

Developer Plaintiffs, and others, filed a "Complaint/Petition for Review" in the Third Judicial

District Court of Summit County, State of Utah.  In that action, Plaintiffs allege that on their face

the 2004 Plan and 2004 Code give rise to constitutional and other violations, and seek

declarations from the Court invalidating the 2004 Plan and 2004 Code, including the affordable

housing objectives in those ordinances.  The court is not aware of any ruling regarding this state

court action.

      The court finds that Plaintiffs lack standing to litigate their discriminatory housing claims

because they have not alleged and cannot prove that the County has utilized the zoning

ordinances or other challenged policies to deny any specific project containing housing which

would allegedly benefit Plaintiffs.  *See, e.g.*, *Hope Inc. v. County of DuPage, Ill.*, 738 F.2d 797

(7th Cir. 1984); *Warth v. Seldin*, 422 U.S. 490 (1975).  The only housing project Plaintiffs allege

the County has denied are the "property plat" submissions made by the Developer Plaintiffs

based upon the Developer Plaintiffs' unilateral assertions that there were no valid zoning

ordinances in place in Summit County.  The court finds that no reasonable jury could find that

they were bona fide "applications" for development approval.  Thus, Plaintiffs' submission,

which unilaterally declared the County's then-existing General Plan and Development Code

invalid and illegal, wholly failed to comply with the then-existing land use ordinances.

      The County has not taken any action to apply its allegedly illegal zoning scheme and

policies to deny approval of the particular project mentioned in Plaintiffs' Complaint, and it has

taken no official action whatsoever with respect to the Developer Plaintiffs' proposed project.

Thus, Plaintiffs' inability to either construct or find affordable or disabled accessible housing in

the County cannot be said to be "fairly traceable" to the County's zoning scheme or policies that Plaintiffs seek to invalidate.   Moreover, Plaintiffs have not demonstrated that it is likely that any alleged housing discrimination injury would be redressed by a favorable decision.  They cannot identify any particular housing project that will be build, nor any personal housing benefit they will receive if the court granted their requested relief on their housing discrimination claims. Accordingly, the court finds that Plaintiffs do not have Article III standing to bring the alleged claims, and this court therefore does not have jurisdiction over the claims.

## B. Remaining Motions

Having found that Plaintiffs do not have standing to litigate their claims, Plaintiffs' Motion for Partial Summary Judgment is necessarily denied, as is their motion for class certification.  Regarding Plaintiffs' Motion to Strike, which pertains to Exhibit B of Phyllis McDonough Robinson's Report, submitted with Defendants' Memorandum in Opposition, and also to Defendants' arguments based on the Exhibit, the court finds that the motion is moot as the court has not relied on Exhibit B or any arguments stemming therefrom.

## IV.  CONCLUSION

For the foregoing reasons and good cause appearing, IT IS HEREBY ORDERED that

(1)     Defendants' Motions for Partial Summary Judgment [Docket #17 and #19] are
          GRANTED;

(2)     Defendants' Motions to Stay [Docket #17 and #19] are MOOT;

(3)     Plaintiffs' Motion for Partial Summary Judgment [Docket #22] is DENIED;

(4)     Plaintiffs' Motion to Certify Class [Docket #24] is DENIED;

(5)     Plaintiffs' Motion to Strike Memorandum in Opposition [Docket #42] is MOOT;

(6)     There are no remaining claims in this action, and therefore the Clerk of the Court is

        directed to enter judgment accordingly and close the case.  Each party to bear its/their

        own costs.

        DATED this 31st day of May 2006.

                                        BY THE COURT:


                                        _____
                                        DALE A. KIMBALL
                                        United States District Judge